UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON NICHOLS,

        Petitioner,

v.                                                                               CASE NO. 07-11923
                                                                       HONORABLE VICTORIA A. ROBERTS

RAYMOND BOOKER,

        Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION, GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Leon Nichols ("Nichols"), a Michigan prisoner, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his state convictions and sentences for malicious destruction of property, Mich. Comp. Laws § 750.377a(1)(c)(i), possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b, and felon in possession of a firearm, Mich. Comp. Laws § 750.224f.  Respondent Raymond Booker ("Respondent") filed an answer, urging the Court through counsel to deny the petition.  Because the Court finds no merit in Nichols' claims, the habeas petition is denied.

### I. PROCEDURAL HISTORY

Nichols was charged in Wayne County, Michigan with two counts of assault with intent to commit murder, two counts of assault with intent to do great bodily harm less than murder, two counts of assault with a dangerous weapon (felonious assault), one count of malicious destruction of property valued at $1,000 to $20,000, one count of felon in possession of a firearm, and one count of felony firearm.  The charges arose from allegations that, on September

3, 2004, Nichols engaged in a shooting incident targeted at Willie Reynolds, but which also endangered the lives of Willie's mother, Sarita Reynolds, and her two daughters, and damaged Sarita's vehicle. Willie Reynolds did not cooperate with the police and declined to press charges. The case nevertheless proceeded against Nichols with Sarita Reynolds and her daughter Maya Reynolds as the complaining witnesses. Nichols waived his right to a jury and was tried before the Honorable Michael M. Hathaway in Wayne County Circuit Court.

### A. Testimony Adduced at Trial

Sarita Reynolds testified that, on September 3, 2004, she returned home in her van to find Nichols sitting in his wheelchair in the middle of the street arguing with her son Willie Reynolds, who was standing in the front yard. (Tr. I, at 5).[1] She said that after she pulled in front of her house, her son came out of the gate toward the van and Nichols, still in the street, pulled out a handgun. (Tr. I, at 7-8). Willie did not have a weapon. (Tr. I, at 11). While Sarita remained in the car, Nichols shot in her direction. (Tr. I, at 9-10). When he fired the shots toward the van, he was only five to seven feet away from the van and from Willie, who stood at the van's side. (Tr. I, at 19-20). Sarita moved the van forward during the shooting to shield Willie from the shots. (Tr. I, at 40).

According to the testimony, Nichols fired three shots toward the van, with two bouncing off the windshield and one lodging itself in the dashboard. (Tr. I, at 10-11). After Nichols fired the initial three shots, Sarita's daughter, Maya Reynolds, grabbed Willie and pulled him back into the yard while the younger daughter, Tyra, stood on the porch. (Tr. I, at 29). At this point,

---

[1] Tr. I refers to the trial transcript of November 29, 2004; Tr. II refers to the trial transcript of December 7, 2004; Tr. III refers to the sentencing transcript of December 21, 2004.

Nichols began shooting again, this time toward the yard in the vicinity of Willie and Sarita's two daughters. (Tr. I, at 11-12). He fired several shots at the yard with one bullet lodging in the front window of the house less than ten feet from where Tyra stood. (Tr. I, at 12-13). In total, Nichols fired seven or eight shots. (Tr. I, at 13). He left the scene before the police arrived.

Sarita Reynolds also testified that a neighbor named Poncho witnessed the shooting from across the street. (Tr. I, at 20, 31). When the first three shots were fired, Poncho said, "Stop shooting," "Don't shoot, K", or "Stop shooting." (Tr. I, at 31). Sarita pointed out Poncho to the police when they arrived. (Tr. I, at 20-21).

The trial judge asked Sarita to explain what the problem was between Nichols and her son Willie. Sarita testified that, previously her car had been stolen, the windows had been shot out, and her house had been broken into. Nichols' brother was the alleged perpetrator. Willie encountered Nichols on a walk to the store on the day of the shooting and they exchanged glares. (Tr. I, at 22-25).

Sarita testified that, on the day in question, her van was damaged from the bullets fired by Nichols and that it cost $475.83 to repair. (Tr. II, at 13). Based on this testimony, the prosecutor amended the malicious destruction of property charge from a felony to a misdemeanor to reflect the actual value of the damage. (Tr. II, at 13-14).

Detroit Police Officer Devon Jackson testified that he arrived on the scene after the shooting on September 3, 2004, in response to a citizen's call that a man had fired shots at her and her van. (Tr. I, at 58-59). Officer Jackson came back to the neighborhood on September 6, 2004, and arrested Nichols. (Tr. I, at 59). Officer Jackson admitted that he did not canvass the neighborhood to find out what the neighbors may have seen. (Tr. I, at 64).

### B.  Petitioner's Motion for a Directed Verdict of Acquittal

At the close of the prosecutor's case in chief, Nichols successfully moved for a directed verdict of acquittal of:  Counts I and II, assault with intent to murder Sarita Reynolds and Maya Reynolds; Counts III and IV, assault with intent to do great bodily harm to Sarita Reynolds and Maya Reynolds; and Counts VII and VIII, assault with a dangerous weapon concerning Sarita Reynolds and Maya Reynolds.  The Court declared that Nichols had "dodged a bullet" due to a charging error.  In finding him not guilty of all the assault charges, the trial judge stated:

> This is a very regrettable state of affairs.  The People made out a perfectly iron clad case of assault with intent to commit murder of Willie Reynolds.  Even without Willie being here, the People made out a perfectly good case and if the defendant had been charged with assaulting Willie Reynolds I would have found him guilty easily.
>
> Why he wasn't charged with that, I don't know.  That's completely baffling to me…[A] charging error…results inevitably in my granting the motion for a directed verdict as to the assault counts. (Tr. II, at 23-24)

Nichols also moved for a directed verdict on the malicious-destruction-of-property charge, amended as a misdemeanor, on two grounds: (1) that malicious destruction of property is a specific intent crime and he did not intend to damage the van; and (2) the misdemeanor charge was improper because it was not brought until the end of trial.  The trial judge denied the motion for a directed verdict with respect to the malicious-destruction-of-property charge, and Nichols agreed that there was enough evidence for the felony-firearm and felon-in-possession charges to go to the fact-finder.

### C.  The Trial Court's Decision and Sentence

On December 7, 2004, the trial court found Nichols guilty of misdemeanor malicious destruction of property, felony firearm, and felon in possession of a firearm.  On December 21,

2004, the trial court sentenced Petitioner to a prison term of two and a half to ten years for being a felon in possession of a firearm (Count V), time served (106 days) for malicious destruction of property (Count VI), and two years for felony firearm (Count IX), with credit for 106 days for time served.  The felony firearm sentence was consecutive to the other sentences.  The trial judge made clear that despite the fact that Nichols could have been convicted of far more serious crimes for the shooting, he should be considered a dangerous criminal and sentenced accordingly.  The judge stated:

> I heard the evidence that indicates that despite your disability you're apparently able to be – you're a real danger to the community….  I'm going to give you a guideline sentence, but I hope you don't think that by dodging the bullet that you dodged on the day of your trial that that in any way should be interpreted by you as a way of condoning your behavior on the date in question.
>
> We have very serious concerns about you, Mr. Nichols.  It's apparent that despite your disability you are inclined to go about your daily affairs armed and that your willingness to use and discharge weapons presents a real endangerment to the community including innocent people.  (Tr. III, at 15-16).

### D.  The Direct Appeal

Nichols filed a post-conviction Application for Delayed Appeal pursuant to Michigan Court Rule 7.205(F)(4) within twelve months of judgment.  The Court of Appeals denied the application on May 11, 2006, "for lack of merit in the grounds presented."  *People v. Nichols*, No. 267050 (Mich. Ct. Appeals, May 11, 2006).  Nichols then appealed to the Michigan Supreme Court, which denied leave to appeal on October 31, 2006.  *See People v. Nichols*, 477 Mich. 912; 722 N.W.2d 844 (2006).

### E.  The Habeas Petition

On May 2, 2007, Nichols filed the present petition, raising the following issues:

> I. The evidence was insufficient to support the conviction of malicious destruction of property; that conviction, as well as the felony firearm conviction must be reversed and Defendant is entitled to resentencing on the remaining count.
>
> II. Defendant is entitled to resentencing because the sentencing guidelines were scored erroneously and Defendant was sentenced on the basis of inaccurate information.

Respondent argues in his answer to the habeas petition that Nichols' claims are not cognizable on habeas review and that he is not in custody for his malicious-destruction-of-property conviction.

## II.  STANDARD OF REVIEW

This Court's habeas corpus review of state court decisions is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court explained that the writ of habeas corpus may not issue unless one of the following two conditions is met:  (1) the state court arrived at a decision that was contrary to clearly established federal law; or (2) the state court decision involved an unreasonable application of clearly established federal law. *Id.*, 529 U.S. at 412, 120 S. Ct. at 1523.  "Clearly

established federal law" refers to the holdings of the Supreme Court, as opposed to its dicta, at the time of the relevant state court decision. *Id*. *Williams* held that a state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*., 529 U.S. at 413, 120 S. Ct. at 1523. A state court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

*Willliams* also established that under the "unreasonable application" clause of §2254(d)(1), it is not necessary that the controlling Supreme Court case be factually on all fours with the case under review. Rather, *Williams* held that "a state-court decision…involves an unreasonable application of [the Supreme] Court's precedent if the state court…unreasonably refuses to extend [a legal] principle to a new context where it should apply." *Id*., 529 U.S. at 407, 120 S. Ct. at 1520.

### III. ANALYSIS

#### A. The "In Custody" Requirement

As a threshold matter, the State argues that because Nichols was sentenced to time served for his malicious-destruction-of-property conviction, he failed to satisfy the "in custody" requirement needed to sustain a habeas petition under 28 U.S.C. § 2254(a).[2] The State, citing

---

[2] This statutory provision reads:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in

*Maleng v. Cook*, 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed. 540 (1989), argues that relief is only available if the petitioner is in custody for the conviction or sentence being challenged at the time the petition is filed.  This court finds for the following reasons that Nichols satisfies the in-custody requirement.

The Supreme Court has held on multiple occasions that a habeas petitioner need not be in actual physical custody under the sentence which he is attacking before a court can take jurisdiction over the petition.  See, e.g., *Carafas v. LaVallee*, 391 U.S. 234, 239, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968) (holding that expiration of petitioner's sentence while habeas petition is being adjudicated does not terminate federal jurisdiction with respect to the petition); *Sibron v. New York*, 392 U.S. 40, 50-58, 88 S.Ct. 1889, 1896-1900, 20 L.Ed.2d 917 (1968) (holding that mere release of the prisoner does not foreclose consideration by a court of the prisoner's habeas petition because the conviction continues to have potentially serious collateral consequences for the prisoner after his release).

In *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 1555, 20 L.Ed.2d 426 (1968), the Supreme Court recognized that the "in custody" provision of the habeas statute is not free of ambiguity, but declared that "in common understanding 'custody' comprehends respondents' status for the entire duration of their imprisonment."  *Id.*, 391 U.S. at 64, 88 S. Ct. at 1555. Thus, a prisoner serving consecutive sentences is "in custody" for the aggregate of the sentences imposed upon him.  *Id.*, 391 U.S. at 64-65, 88 S. Ct. at 1555.  Under the doctrine announced in

---

custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

*Peyton*, prisoners are able to seek habeas relief from a consecutive sentence which has not begun because "they are 'in custody in violation of the Constitution' if any consecutive sentence they are scheduled to serve was imposed as the result of a deprivation of constitutional rights." *Id.*

*Maleng* is distinguishable from *Peyton* because the petitioner in *Maleng* was not serving consecutive sentences. Rather, he filed his petition while in prison for a completely unrelated crime, years after the conviction and sentence under attack had expired. The Supreme Court in *Maleng* stressed that it had "never extended [the "in custody" requirement] to the situation where a habeas petitioner suffers no present restraint from a conviction." *Maleng*, 490 U.S., at 492, 109 S.Ct., at 1926. Thus, although the Supreme Court had consistently construed the "in custody" provision very liberally in the past, the expiration of the conviction and sentence under attack led the Court to conclude that the petitioner was not "in custody." The case before us is clearly distinguishable from *Maleng* since Nichols has been imprisoned continuously for convictions arising out of the September 3, 2004 shooting.

The Court believes the controlling case is *Garlotte v. Fordice*, 515 U.S. 39, 115 S.Ct. 1948, 132 L.Ed.2d 36 (1995), where the Supreme Court held: "[Petitioner] remains 'in custody' under all of his sentences until all are served, and now may attack the conviction underlying the sentence scheduled to run first in the series." *Id.*, 515 U.S. at 41, 115 S.Ct., at 1949-50. In *Garlotte*, the petitioner sought to attack a conviction which ran first in a consecutive series, a sentence already served, but which persisted in postponing his eligibility for parole. The Court in *Garlotte* built upon the principle set forth in *Peyton*, that "a prisoner serving consecutive sentences is 'in custody' under any one of them for purposes of the habeas statute." *Id.*, 515 U.S. at 45, 115 S.Ct. at 1952 (quoting *Peyton*, 391 U.S. at 67, 88 S.Ct. at 1556).

9

The facts in Nichols' case are more aligned with those in *Garlotte*, where a prisoner challenged one in a series of consecutive sentences, than those in *Maleng*, where years passed between the expiration of sentence and the habeas petition. In addition, Nichols, like Garlotte, may be experiencing collateral consequences arising from the conviction. The Court finds that Nichols has the right to habeas review of his conviction for malicious destruction of property.

### B.  The Sufficiency-of-the Evidence Claim

Nichols first alleges there was insufficient evidence to convict him of malicious destruction of property. He claims that, based on the evidence presented at trial, the trial court could not have found that he had specific intent to damage the van. Essentially, Nichols' argument is that, because he was trying to shoot the victim, he did not have the requisite intent to support a conviction for malicious destruction of property. Nichols argues, therefore, that because specific intent to damage property is an essential element of malicious destruction of property, and because the trial court failed to find this essential element, his conviction must be vacated. Nichols then summarily concludes that his conviction for felony firearm must also be vacated and that he is entitled to resentencing on the remaining count of felon in possession of a firearm.

### 1.  Legal Framework

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). After *Winship*, the critical question on review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution,

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in the original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*, 443 U.S. at 324 n. 16, 99 S. Ct. at 2792 n.16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citing *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000)). The *Jackson* standard applies to bench trials, as well as jury trials. *See Gilley v. Collins*, 968 F.2d 465, 467 n.3 (5th Cir. 1992).

The Michigan statute for malicious destruction of property, Mich. Comp. Laws § 750.377a, provides in relevant part:

> (1) A person who willfully and maliciously destroys or injures the personal property of another person is guilty of a crime as follows:
>
>    . . . .
>
>    (c)   If any of the following apply, the person is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $2,000.00 or 3 times the amount of the destruction or injury, whichever is greater, or both imprisonment and a fine:
>
>        (i)   The amount of the destruction or injury is $200.00 or more but less than $1,000.00.

In Michigan, malicious destruction of property is a specific intent crime. A conviction must be supported by evidence that the defendant intended to injure or destroy the property in question. *People v. Culp*, 108 Mich. App. 452, 458, 310 N.W.2d 421 (1981). "Intent is a question of fact to be inferred from the circumstances by the trier of fact." *People v. Kieronski*, 214 Mich. App. 222, 232; 542 N.W.2d 339 (1995). Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to sustain the conclusion that

11

the defendant possessed the requisite intent. *People v. Bowers*, 136 Mich. App. 284, 297; 356 N.W.2d 618 (1984) (holding that a trier of fact may look to circumstantial evidence to infer the specific intent needed to support a conviction for larceny). Furthermore, reckless acts can lead to the conclusion that the defendant specifically intended to damage property. *See McKinney v. Caball*, 40 Mich. App. 389, 391; 198 N.W.2d 713 (1972) (explaining that, in *Shelby Mutual Insurance Co. v. United States Fire Insurance Co.*, 12 Mich. App. 145; 162 N.W.2d 676 (1968), the Michigan Court of Appeals "held that 'reckless conduct' of a minor in driving a stolen car could qualify as 'willful or malicious' destruction of property"); *People v. Edmunds*, No. 237497, 2003 WL 21464559, at *2 (Mich. Ct. App. June 24, 2003) (unpublished decision stating that the defendant's "wild and reckless manner" of driving over the complainant's lawn, drain field, and flower bed "supported a reasonable inference and was sufficient for a rational trier of fact to conclude that defendant specifically intended to damage the complainant's property").

### 2. Application

The evidence supporting Nichols' conviction for malicious destruction of property was stated by the trial judge:

> I'm also convinced beyond a reasonable doubt that he maliciously destroyed the personal property of complainant's – the complainant Sarita Reynolds', Dodge Caravan. The amount of damage was apparently less than $1,000.
>
> And I should comment, too, that the – and I notice that the elements of malicious destruction of property are that the defendant destroyed or damaged property, third, that the defendant did this knowing that it was wrong without just cause or excuse and with the intent to damage or destroy property. The defendant's original intent here was obviously not to destroy anybody's property or particularly Sarita Reynolds' property, but in the process of his shooting spree at a point in time when the original intended victim moved close to Sarita Reynold's car and the defendant continued to fire at him in such an indiscriminate way that he inevitably hit the car a number of times with a number of bullets, I believe that his intent to cause damage to Sarita Reynolds' car can be inferred

>from his extremely reckless and careless actions in his use of the gun and that's why I find that the third element of the malicious destruction of property charge has been satisfied and the amount in question was satisfied with Ms. Reynolds' testimony. So I'm finding him guilty of that. (Tr. II, 26-27).

The two unintended victims of Mr. Nichols' shooting spree, Sarita Reynolds and her daughter Maya Reynolds, offered pertinent testimony at trial on the malicious-destruction-of-property charge. Sarita Reynolds testified that she drove her van in front of her house in the midst of an argument between her son Willie and Nichols. (Tr. I, at 7). She further testified that Nichols fired three gunshots in her direction and that two bounced off the windshield and one came through it, lodging in the dashboard. (Tr. I, at 10). During the shooting Nichols was only five to seven feet from the car (Tr. I, at 19), and the intended victim, Willie, was standing at the side of the car opposite to Nichols. (Tr. I, at 28). Maya Reynolds testified that her mother Sarita Reynolds moved the van to try to block the shots between Nichols and Willie. (Tr. I, at 40). She further testified that Willie ran behind Sarita Reynolds' van because he was dodging bullets from Nichols. (Tr. I, at 52-53).

Based upon the testimony of Sarita and Maya Reynolds, the finder of fact could have reasonably concluded that Mr. Nichols intended to damage Sarita Reynolds' vehicle. Nichols grasps upon the trial judge's statement – that "defendant's original intent here was obviously not to destroy anybody's property" – in arguing that he did not have the requisite specific intent. The key word in that phrase, however, is *original*. Both Sarita and Maya Reynolds testified that Nichols was in the street at the time of the shooting while the intended victim was on the lawn. Further, both witnesses testified that Sarita Reynolds moved her van forward to act as a shield between Nichols and the intended victim, and that Willie took cover behind the van. Finally, both witnesses testified that Nichols was no more than five to seven feet from the van when he

13

fired the first round of shots that damaged the van. Although Nichols' original intent may have been to shoot the victim, it is not unreasonable for the trial court to have concluded that, as Sarita Reynolds moved her van forward so that it might act as a shield, Nichols intended to damage the van by shooting through it to get to the intended victim. Taking the evidence in the light most favorable to the prosecution, this Court finds that there was sufficient evidence to convict Nichols of malicious destruction of property based on the firing of multiple gunshots in the direction of Sarita Reynolds' van.

### 3. The State Court's Application of State Law

To the extent that Nichols argues the trial court applied the wrong *mens rea* requirement when ruling on the malicious-destruction-of-property charge, that claim is not cognizable on habeas review. In *Sanford v. Yukins*, 288 F.3d 855 (6th Cir. 2002), the United States Court of Appeals for the Sixth Circuit explained the difference between pure sufficiency claims and substantive state law claims disguised as sufficiency claims:

> Evidence can be "insufficient" only in relation to a rule of law requiring more or different evidence. When a state court enters or affirms a conviction, it is saying that the evidence satisfies legal norms. These norms are for the state to select. State law means what state courts say it means. **A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254.**

*Sanford*, 288 F.3d at 860 (quoting *Bates v. McCaughtry*, 934 F.2d 99, 102 (7th Cir. 1991)) (emphasis added).

Stated slightly differently, whether the state court correctly understood the law is a question of state law beyond the reach of a federal court on collateral attack. *Bates*, 934 F.2d at 103. Thus, even if the trial judge did err in applying the wrong *mens rea* standard, a constitutional question does not automatically arise. The Supreme Court stated: "We cannot

treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question." *Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948).

For all of these reasons, Nichol's petition for a writ of habeas corpus on the malicious-destruction-of-property claim is denied. In addition, since Nichols presents no argument why a writ of habeas corpus should issue on his felony firearm conviction independent of his assertion that the malicious-destruction-of-property conviction must be vacated, the writ is denied on the felony-firearm conviction as well, and Petitioner is not entitled to re-sentencing for his felon-in-possession conviction.

### C. The Sentencing Claim

Nichols contends that offense variable 9 of the state sentencing guidelines was scored erroneously at sentencing and he is entitled to resentencing. According to Nichols, the trial court erred in finding that there were more than two victims of his shooting, even though he was acquitted of all assault charges. He argues that the score of 10 points given for Offense Variable 9, for two to nine victims, is incorrect. Rather, he argues that because there were no victims of his shooting, the score for Offense Variable 9 should be zero points. He adds that even if the Court considered Willie Reynolds a victim, although he was never charged for assaulting Willie, the score should still have been zero for fewer than two victims.

The state court's interpretation and application of state sentencing guidelines is a matter of state concern only, *Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003), and a habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *see also*

*Haynes v. Butler*, 825 F.2d 921, 923 (5th Cir. 1987).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).  Federal habeas corpus relief does not lie for perceived errors of state law.  *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984).

     Although Nichols' challenge to the scoring of the state sentencing guidelines is not a cognizable claim on habeas review, Nichols purports to assert a constitutional claim by alleging that he was sentenced on the basis of inaccurate information.  In *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), and in *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), the Supreme Court invalidated the defendants' sentences because they were imposed by trial courts in reliance upon inaccurate facts regarding the defendants' criminal history.  In both cases, certain past convictions turned out to be either acquittals or invalid due to unconstitutionality.  The Supreme Court held that the reliance on inaccurate information resulted in a violation of the defendants' due process rights.

     Nichols cannot invoke the rule set forth in *Tucker* and *Townsend* because his claim does not involve a misunderstanding of material fact relied upon by the trial judge at sentencing.  Rather, Nichols' resentencing claim is actually a challenge to state law disguised as a due process claim.  What constitutes a "victim" under the Michigan sentencing guidelines, *see* Mich. Comp. Laws § 777.39, is a question of state law that is not subject to habeas review, and the Court may not grant habeas relief on the basis of a perceived error of state law.  *McGuire,* 502 U.S. at 68, 112 S.Ct. at 480; *Jeffers,* 497 U.S. at 780, 110 S.Ct. at 3102; *Harris*, 465 U.S. at 41,

16

104 S.Ct. at 875.  That being said, the Michigan Supreme Court has held that even innocent bystanders of crimes can be counted as "victims" under Mich. Comp. Laws § 777.39 if they were placed in danger of injury or loss of life.  *People v. Morson*, 471 Mich. 248, 261-63; 685 N.W.2d 203 (2004).  Thus, Nichols was not sentenced on the basis of materially inaccurate information; his claim that he is entitled to resentencing is denied.

## IV.  CONCLUSION

The state appellate court's conclusion that Nichols' claims lacked merit was not contrary to, nor an unreasonable application of, federal law as determined by the United States Supreme Court.  Accordingly, the Petition for Writ of Habeas Corpus [Dkt. #1] is **DENIED**.

Nichols' first claim, that the evidence was insufficient to support his convictions, nevertheless "warrant[s] encouragement to proceed further."  *Banks v. Dretke*, 540 U.S. 668, 674, 124 S. Ct. 1256, 1262, 157 L.Ed. 2d 1166 (2004).  Accordingly, Nichols may appeal this Court's decision on his first claim.  Reasonable jurists would not disagree with the Court's resolution of Nichols' sentencing claim.  The Court therefore declines to issue a certificate of appealability on Nichols' second habeas claim.  He may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 6, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record and Leon Nichols by electronic means or U.S. Mail on August 6, 2009.

s/Linda Vertriest

Deputy Clerk

18